IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMIRI CURRY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.:  07-CV-6149 |
| v. | Judge Norgle |
| JPMORGAN CHASE & CO.; CHASE INVESTMENT SERVICES CORP.; and DOES 1 through 10, inclusive, | Magistrate Judge Schenker |
| Defendants. | |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS JPMORGAN CHASE & CO. AND CHASE INVESTMENT SERVICES CORP., INC. IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS OR STRIKE PURSUANT TO FED. R. CIV. P. 12**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

    A.  Litigating Plaintiff's Overtime Claims on an Opt-Out Basis Would Inherently
        Conflict With FLSA Section 16(b). ......................................................................... 2

    B.  Federal Law Preempts Using Rule 23 To Adjudicate Absent Class Members'
        Overtime Claims. ................................................................................................. 5

    C.  Litigating Plaintiff's State Law Overtime Claim Using The Opt-Out Procedures of
        Rule 23 Would Violate The Rules Enabling Act. ............................................... 11

    D.  An Opt-Out Class Action Under Rule 23 Remains Inferior To Other Available
        Methods For Adjudication. ................................................................................. 12

III.  CONCLUSION ................................................................................................. 14

## TABLE OF AUTHORITIES

## FEDERAL CASES

Bartleson v. Winnebago Industrial, Inc.,
    219 F.R.D. 629 (N.D. Iowa 2003) ..............................................................................3

De Asencio v. Tyson Foods, Inc.,
    342 F.3d 301 (3d Cir. 2003)....................................................................................11

De La Cruz v. Gill Corn Farms,
    No. 03-CV-1133, 2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005)...................................5

Edwards v. City of Long Beach,
    467 F. Supp. 2d 986 (C.D. Cal 2003) ....................................................................5, 13

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974)....................................................................................................8

Ellis v. Edward D. Jones & Co., L.P.,
    527 F. Supp. 2d 439 (W.D. Pa. 2007)...................................................4, 10, 11, 7, 9, 12

Evancho v. Sanofi-Aventis U.S., Inc.,
    No. 07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007)............................................4

Harper v. Yale International Insurance Agency Inc.,
    No. 03 C 3789, 2004 WL 1080193 (N.D. Ill. May 12, 2004) .......................................5

Herring v. Hewitt Associates, Inc.,
    No. 06-267, 2006 WL 2347875 (D.N.J. Aug 11, 2006) ..............................................4

Hoffman-La Roche, Inc. v. Sperling,
    493 U.S. 165 (1989)............................................................................................2, 7, 8

Hyman v. WM Financial Services, Inc.,
    No. 06-4038, 2007 WL 1657392 (D.N.J. Jun. 7, 2007) ..............................................4

Kakani v. Oracle Corp.,
    No. 06-6493, 2007 WL 1793774 (N.D. Cal. Jun. 19, 2007)........................................9

Klein v. Ryan Beck Holdings, Inc.,
    No. 06-2460, 2007 WL 2059828 (S.D.N.Y. July 13, 2007)......................................4, 8

LaChapelle v. Owens-Illinois, Inc.,
    513 F.2d 286 (5th Cir. 1975) ....................................................................................2

Ladegaard v. Hard Rock Concrete Cutters, Inc.,
    No. 00-CV-5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000)................................4, 14

Leuthold v. Destination America,
    224 F.R.D. 462 (N.D. Cal 2004) ..................................................................................5

Marquez v. Partylite Worldwide, Inc.,
    No. 07-C-2024, 2007 WL 2464667 (N.D. Ill. August 27, 2007)................................14

McClain v. Leona's Pizzeria, Inc.,
    222 F.R.D. 574 (N.D. Ill. 2004)........................................................................4, 5, 13

Miller v. Motorola, Inc.,
    76 F.R.D. 516 (N.D. Ill. 1977) ..................................................................................13

Moeck v. Gray Supply Corp.,
    No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006)...................................................3, 4

Muecke v. A-Reliable Automobile Parts & Wreckers, Inc.,
    No. 01 C 2361, 2002 WL 1359411 (N.D. Ill. Jun 21, 2002) ................................5, 13

Otto v. Pocono Health System,
    457 F. Supp. 2d 522 (M.D. Pa. 2006) .......................................................................2, 4

Overnite Transport Co. v. Tianti,
    926 F.2d 220 (2d Cir. 1991).........................................................................................6

Prickett v. DeKalb County,
    349 F.3d 1294 (11th Cir. 2003) ...................................................................................7

Ramsey v. Ryan Beck & Co., Inc.,
    No. 07-635, 2007 WL 2234567 (E.D. Pa. Aug. 1, 2007) .............................................4

Riddle v. Nat'l Sec. Agency Inc.,
    2007 WL 2746597, (N.D. Ill. Sept. 13. 2007) ............................................................2

Rodriquez v. The Texan, Inc.,
    No. 01 C 1478, 2001 WL 1829490 (N.D. Ill. March 7, 2001) .................................4, 5

Schneidewind v. ANR Pipeline Co.,
    485 U.S. 293 (1988).................................................................................................5, 7

United States v. Locke,
    529 U.S. 89 (2000).....................................................................................................10

<u>Webster v. Fall</u>,
        266 U.S. 507 (1925)............................................................................................3

<u>Williams v. Trendwest Resorts, Inc.</u>,
        No. 05-0605, 2007 WL 2429149 (D. Nev. Aug. 20, 2007).....................................4, 5

<u>Williamson v. General Dynamics Corp.</u>,
        208 F.3d 1144 (9th Cir. 2000) ........................................................................6

<u>Woodard v. Fedex Freight East, Inc.</u>,
        ___ F.R.D. ___, 2008 WL 471552 (M.D. Pa. Feb. 19, 2008) ..........................2, 3, 10

## FEDERAL STATUTES AND RULES

28 U.S.C. § 2072..............................................................................................11, 12

29 U.S.C. § 207....................................................................................................6

29 U.S.C. § 216.................................................................................................1, 2, 6

29 U.S.C. § 218.....................................................................................................9

Fed. R. Civ. P. 23 ...........................................................................................*passim*

Pub. L. 49, ch. 52 § 61 Stat. 84 (1947) ........................................................................2

## STATE STATUTES

820 ILCS 105/4a...............................................................................................6, 7

## MISCELLANEOUS

Secretary of Labor Amicus Letter Brief submitted in
        <u>Long John Silver's Restaurants, Inc. v. Cole</u>,
        No. 05-CV-3039 (D.S.C. filed Dec. 13, 2005) .........................................................7, 10

## I.  **INTRODUCTION**

In its opening brief, Defendants (collectively referred to as "Chase") explained that Congress expressly amended the Fair Labor Standards Act ("FLSA") to ban "Representative Actions" and to require that an individual worker's written consent be filed with the Court before his or her rights can be adjudicated in any "action to recover the liability prescribed" by the statute's overtime provision. 29 U.S.C. § 216(b). Here, Plaintiff is attempting to do exactly what Congress has said he cannot do: he is seeking to adjudicate the overtime rights of absent class members without their written consent. Plaintiff seeks to do this by litigating a state law claim – seeking premium overtime compensation for the same hours as his FLSA claim, based on the same alleged facts, and under identical legal standards – as an opt-out class action under Rule 23. Proceeding in this manner will not only adjudicate the state law overtime rights of absent class members, but will also adjudicate their *FLSA* claims without their written consent under principles of *res judicata* and *collateral estoppel* because both claims involve the same facts and the same legal standards. Many courts (including this Court) have precluded plaintiffs from litigating state law overtime claims as opt-out class actions because doing so would violate the FLSA's written consent, or opt-in, requirement.

Plaintiff nevertheless claims to be "incredulous[]" (Opposition Brief ("Pl. Opp."), 1) that Chase has asserted arguments that this and many other courts have adopted. Plaintiff's feigned incredulity stems from the fact that he repeatedly mischaracterizes Chase's arguments and then cuts down straw man arguments of his own creation. Plaintiff further ignores virtually all of the authority cited by Chase and relies primarily on cases that did not even consider, much less reject, Chase's arguments. Most significantly, however, Plaintiff's Opposition fails to dispute that this is "[a]n action to recover the liability prescribed by" the FLSA to which the written consent requirement applies, or that the FLSA overtime rights of absent class members will be adjudicated without their written consent under principles of *res judicata* and *collateral estoppel*. For these reasons, as described more fully below, Chase respectfully requests that the Court dismiss or strike Plaintiff's state law class claim for overtime.

## II.  <u>ARGUMENT</u>

A.    **Litigating Plaintiff's Overtime Claims on an Opt-Out Basis Would Inherently Conflict With FLSA Section 16(b).**

As Chase explained in its opening brief, Congress had two chief purposes when, in response to a flood of "representative" litigation, it amended the FLSA to preclude an employee's rights from being adjudicated, absent the employee's "consent in writing," in any action seeking to recover the liability prescribed by the FLSA.  29 U.S.C. § 216(b); Pub. L. 49, ch. 52 § 61 Stat. 84, 87 (1947).  Congress added this "opt-in" requirement "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions."  <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 173 (1989).  Allowing Plaintiff to use Rule 23 to pursue his state law overtime claims that are duplicative of the FLSA overtime claims on an opt-out basis "would essentially nullify Congress's intent in crafting Section 16(b) and eviscerate the purpose of Section 16(b)'s opt-in requirement."  <u>Otto v. Pocono Health Sys.</u>, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006).  <u>See also</u> <u>Riddle v. Nat'l Sec. Agency, Inc.</u>, 2007 WL 2746597, at *8 (N.D. Ill. Sept. 13, 2007) (Congress designed the FLSA's opt-in language to "prohibit what precisely is advanced under Rule 23-a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members"); <u>LaChapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 288 (5th Cir. 1975) ("[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA s 16(b) . . . . These two types of class actions are mutually exclusive and irreconcilable"); <u>Woodard v. Fedex Freight East, Inc.</u>, ___ F.R.D. ___, 2008 WL 471552, at *11 (M.D. Pa. Feb. 19, 2008) ("Rule 23 is the antithesis of § 216(b)").

Numerous courts, both in this and other Circuits, have recognized that allowing plaintiffs to use Rule 23 to litigate state law overtime claims as opt-out class actions would undermine Congress's intent in creating the FLSA's opt-in requirement.  (Motion To Dismiss ("Def. Mot."), 3-6).  In response, Plaintiff characterizes the authority relied upon by Chase as "selective citation to a few decisions purportedly favorable to [Chase's] position," (Pl. Opp., 3), and cites to a

2

laundry list of 51 district courts that purportedly permitted Rule 23 class actions for state wage violations to properly proceed simultaneously with FLSA collective actions.  (Pl. Opp., 9-10 n.7).  Significantly, however, very few of the 51 decisions Plaintiff lists ever addressed the incompatibility of Section 16(b) and opt-out class actions for overtime or whether simultaneous prosecution thereof would undermine Congress's intent.  As one district court recently noted, the fact that those other courts allowed Rule 23 class actions for state overtime violations to proceed together with FLSA collective actions should not be considered a rejection of an argument that those courts never considered.  See Woodard, 2008 WL 471552, at *10 (citing many of the same cases Plaintiff cites).  See also Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions . . . neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").  Although Plaintiff contends that the "vast majority" of the courts that have considered the issues Chase has raised have rejected its arguments, he cites only to his omnibus footnote of every case that has permitted a state law class action for overtime without identifying which, if any, actually considered any of the issues Chase has raised.[1]

The reason Plaintiff attempts to obscure the cases that have considered Chase's arguments is because, despite Plaintiff's attempt to suggest otherwise, Chase is not only relying on the majority view, but on the continuing trend of courts rejecting the efforts of plaintiffs and their counsel to use Rule 23 to circumvent the opt-in requirement of FLSA Section 16(b).  Plaintiff claims that the "majority" of decisions Chase cited in its opening brief were not based on an irreconcilable conflict with FLSA Section 16(b).  (Pl. Opp., 10-11, n.9).  But the only decision Plaintiff cites to support this claim is Moeck v. Gray Supply Corp., No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006), in which the court, *before* finding a lack of commonality and typicality, explained:

---

[1]     Furthermore, nestled among the 51 cases Plaintiff cites in his lengthy footnote is at least one decision that *supports* Chase's arguments.  See, e.g., Bartleson v. Winnebago Indus., Inc., 219 F.R.D. 629, 637-39 (N.D. Iowa 2003) (*denying* certification of state law overtime claim and only permitting those individuals who had opted into the FLSA action to assert state law overtime claims).

> Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions. Allowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions.

Moeck, 2006 WL 42368, at *5 (citing McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574 (N.D. Ill. 2004)). Indeed, not only does Moeck unquestionably support Chase's position, but many other courts have relied upon this precise point from Moeck in reaching similar conclusions about the incompatibility of opt-out class actions with the FLSA.[2] Plaintiff's characterization of other cases is similarly flawed.[3]

Finally, Plaintiff's discussion of case law from courts in this district is equally unavailing. Plaintiff contends that the Court's decision in Ladegaard v. Hard Rock Concrete Cutters, Inc., No. 00-CV-5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000), "should put to rest" the notion that adjudicating overtime claims on an opt-out basis conflicts with the FLSA. (Pl. Opp., 12). Since Ladegaard was decided, however, at least five other judges in this district have adopted the reasoning advanced by Chase in this motion. The first was Judge Shadur's observation that Congress's intent behind the FLSA's opt-in requirement "would be thwarted if a Plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." Rodriquez v. The Texan, Inc., No. 01

---

[2]   See, e.g., Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 449 (W.D. Pa. 2007); Evancho v. Sanofi-Aventis U.S., Inc., No. 07-2266, 2007 WL 4546100, at *2 (D.N.J. Dec. 19, 2007); Williams v. Trendwest Resorts, Inc., No. 05-0605, 2007 WL 2429149, at *4 (D. Nev. Aug. 20, 2007); Ramsey v. Ryan Beck & Co., Inc., No. 07-635, 2007 WL 2234567, at *2 (E.D. Pa. Aug. 1, 2007); Hyman v. WM Financial Services, Inc., No. 06-4038, 2007 WL 1657392 (D.N.J. Jun. 7, 2007); Otto v. Pocono Health Sys., 457 F. Supp. 2d 522, 523-24 (M.D. Pa. 2006); Himmelman v. Cont'l Cas. Co., No. Civ. 06-166, 2006 WL 2347873 (D.N.J. Aug. 11, 2006); Herring v. Hewitt Assocs., Inc., No. 06-267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006).

[3]   For example, Plaintiff also states that the court in Klein v. Ryan Beck Holdings, Inc., No. 06-2460, 2007 WL 2059828 (S.D.N.Y. July 13, 2007), recently called Defendants' "inherent incompatibility" argument "an imaginary legal doctrine." (Pl. Opp., 1 n.1). While the Klein court expressed its doubts about the applicability of the Rules Enabling Act, (Def. Br., 15 n.6), nowhere does the decision state that Defendants' "inherent incompatibility" argument is "an imaginary legal doctrine."

C 1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001).  Since Rodriguez, several courts in this district have adopted similar reasoning.  See Riddle, 2007 WL 2746597, at *4 (following logic of Rodriguez and denying Rule 23 certification of state law overtime claims); McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577 (N.D. Ill. 2004) (to allow the plaintiff to use Rule 23 to certify an opt-out class for state law overtime claims "would undermine Congress's intent to limit these types of claims to collective actions"); Harper v. Yale Int'l Ins. Agency Inc., No. 03 C 3789, 2004 WL 1080193, at *5 (N.D. Ill. May 12, 2004) (class certification of Illinois Minimum Wage Law claims arguably subverts congressional intent in creating the FLSA's opt-in scheme). Cf. Muecke v. A-Reliable Auto Parts & Wreckers, Inc., No. 01 C 2361, 2002 WL 1359411 at *2 (N.D. Ill. June 21, 2002) (declining to certify opt-out class for state law overtime claims).[4]

Despite Plaintiff's attempts to suggest otherwise, a clear trend has developed both inside and outside of this district in which courts have refused to permit plaintiffs to circumvent the FLSA's opt-in mechanism by using Rule 23 to litigate overtime claims on an opt-out basis.

**B.     Federal Law Preempts Using Rule 23 To Adjudicate Absent Class Members' Overtime Claims.**

The Supreme Court has explained that federal preemption of state law can occur under three circumstances:  (1) where Congress explicitly preempts a state law, (2) where a state law conflicts with federal law by standing as an obstacle to the accomplishment of Congress's full purposes and objectives, or (3) where Congress has indicated an intent to occupy a given field to the exclusion of state law.  Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300 (1988). In its opening brief, Chase argued that the first two types of preemption (express preemption and implied preemption based on a conflict) are applicable to the instant case.

---

[4]     In addition, just as Moeck influenced several subsequent decisions, many courts outside this district have also quoted or adopted the "shoehorning in" language that originated with this Court in Rodriguez. See, e.g., Williams, 2007 WL 2429149 at *4; Edwards v. City of Long Beach, 467 F. Supp. 2d 986, 993 (C.D. Cal. 2006); De La Cruz v. Gill Corn Farms, No. 03-CV-1133, 2005 WL 5419056 (N.D.N.Y. Jan. 25, 2005); Leuthold v. Destination America, 224 F.R.D. 462, 470 (N.D. Cal. 2004).

Plaintiff largely ignores Chase's arguments and instead focuses primarily on the third type of preemption (field preemption), which does not apply here. For example, Plaintiff relies on the Ninth Circuit's decision in <u>Williamson v. General Dynamics Corp.</u>, 208 F.3d 1144 (9th Cir. 2000), to argue that "'Congress did not intend to preempt the entire field' of wage and hour regulation." (Pl. Opp., 6). This case, and this argument, are irrelevant to Chase's motion. Similarly, Plaintiff quotes the Second Circuit's statement in <u>Overnite Transp. Co. v. Tianti</u>, 926 F.2d 220, 222 (2d Cir. 1991) that "every Circuit that has considered the issue has reached the same conclusion – state overtime wage law is not preempted by…the FLSA." (Pl. Opp., 7). In <u>Overnite</u>, the court upheld the Connecticut's power, through its Wage and Hour Act, to require overtime payments in circumstances where such payments were not required by the FLSA. Thus, <u>Overnite</u> merely stands for the unremarkable proposition that that the FLSA does not preempt states from enacting more restrictive substantive overtime requirements. But Chase never argued that the FLSA preempts states from enacting more restrictive substantive overtime requirements. Indeed, Chase *expressly stated* in its opening brief that it "does <u>not</u> contend that the FLSA preempts the Illinois Minimum Wage Law or Plaintiff's individual claim under that statute." (Def. Br., 10 n.5). Nor does the FLSA prevent any other individual who is permitted to opt into this case from asserting his or her own claim for overtime under Illinois law. Rather, Chase challenges Plaintiff's attempt to use Rule 23's opt-out procedure to litigate the overtime claims of absent class members who have not filed their written consent with this Court.

With respect to express preemption, Plaintiff argues that the plain language of Section 16(b) shows that the section does not apply to his Illinois overtime claim. (Pl. Opp., 3-5). The same language Plaintiff quotes from Section 16(b), however, expressly applies the written consent requirement to any "*action* to recover the liability prescribed in [section 6, 7, or 15(a)(3) of the FLSA]." 29 U.S.C. § 216(b) (emphasis added). Section 7 of the FLSA requires employers to pay overtime compensation for all hours over 40 in a workweek, unless an exemption applies. 29 U.S.C. § 207. Plaintiff asserts a claim under FLSA Section 7 in this case. (Compl. ¶¶ 46-52). Like FLSA Section 7, Illinois's overtime statute requires employers to pay

overtime compensation for all hours over 40 in a workweek, and applies the same exemption standards as the FLSA.  820 ILCS 105/4a.  Plaintiff does not dispute that his state overtime claim is substantively identical to his overtime claim under the FLSA – seeking premium overtime compensation for the same hours, based on the same facts, under the same legal standards as his FLSA overtime claim.  Thus, it is undisputed that this case is "[a]n action to recover the liability prescribed" by the FLSA, both because this case includes an FLSA claim and because his state law overtime claim is duplicative of the FLSA overtime claim.  See Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003) ("That plain language [of Section 16(b)] indicates that plaintiffs do not opt-in or consent to join an action as to specific claims, but *as to the action as a whole*") (emphasis added).

In addition to express preemption, Plaintiff's state law class action claim for overtime is impliedly preempted as a result of conflict with the FLSA's opt-in requirement.  It cannot be disputed that the FLSA has preemptive effect over state law that conflicts with the FLSA. Plainly, for example, the FLSA would preempt a state law that purported to permit a *lower* minimum wage than that provided by the FLSA.  Likewise, the FLSA would preempt a state law that permitted employers to avoid paying overtime to employees until they had worked at least *50* hours in a workweek.  Such state laws would be impliedly preempted because they would conflict with federal law.  Schneidewind, 485 U.S. at 299-300.  Similarly, in this case, by creating the written consent requirement of FLSA Section 16(b), Congress afforded workers with a substantive protection of their overtime rights.  See Secretary of Labor Amicus Letter Brief in Long John Silver's Rests., Inc. v. Cole, No. 05-CV-3039 (D.S.C. Filed Dec. 13, 2005) ("in the Secretary's view, the right to participate in a collective action only upon submission of one's written consent is a substantive right"); Ellis, 527 F. Supp. 2d at 455 (the rights Congress created when it established the FLSA's opt-in requirement "are clearly substantive rights").  See also Sperling, 493 U.S. at 173 (Congress added this "opt-in" requirement "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right . . .").  Likewise, Congress afforded employers a substantive protection by "freeing employers of the burden of

representative actions." Id.  Plaintiff's effort to deprive absent class members (and Chase) of the substantive protections of Section 16(b) by using Rule 23 to litigate duplicative state law overtime claims on an opt-out basis is preempted.

Despite Plaintiff's efforts to create confusion around this issue (Pl. Opp., 14), the reason why the adjudication of the *state law* overtime claims of absent class members would adjudicate the *FLSA* overtime claims of absent class members without their consent is not complicated. Under Rule 23, any class member who does not affirmatively request exclusion from a suit is bound by any judgment in that suit.  Fed. R. Civ. P. 23(c)(3); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974).  Thus, if Plaintiff were permitted to litigate his state law overtime claim as a Rule 23 class action and he were determined to be exempt or otherwise not entitled to overtime under Illinois law, that determination would also be binding on a hypothetical absent class member, John Doe, who failed to opt out of the action.  By not opting out of the action, Mr. Doe clearly would be barred by *res judicata* or collateral estoppel from later asserting an overtime claim against Chase under Illinois law.  (Def. Br., 11-12).  In addition, because any overtime claim under the FLSA would be based on the same facts and the same legal standards as the state law overtime claim, Mr. Doe also would be barred by from asserting an *FLSA overtime claim* against Chase *even though he never gave consent* to opt into the action.  (Def. Br., 12-13).

Plaintiff claims, halfheartedly, that it cannot be said "definitively" that adjudication of an absent class member's state law overtime claim would have *res judicata* effect over of that individual's FLSA claim.  (Pl. Opp., 14).  Yet, Plaintiff fails to distinguish any of the authority Chase cited holding that the adjudication of state law claims would plainly have preclusive effect over FLSA claims that arise out of the identical alleged facts and are based on the same legal standards.  In fact, even one of the primary cases upon which Plaintiff relies expressly recognized that the adjudication of absent class members' state law claims under Rule 23 would have preclusive effect on their FLSA claims.  Klein, 2007 WL 2059828, at *7.  But Klein, like Plaintiff, wrongly concludes that absent class members can simply avoid the consequences of *res judicata* by opting out of the Rule 23 class action.  (Pl. Opp. 14) (citing Klein, 2007 WL

2059828).  Congress decided that the rights of absent class members should be protected by a written consent, or opt-in, requirement.  Thus, Plaintiff's view that an opt-out requirement is sufficient to protect those rights must yield to the judgment (and legislation) of Congress.

Perhaps the best statement of the flaw in Plaintiff's reasoning comes from <u>Kakani v. Oracle Corp.</u>, No. 06-6493, 2007 WL 1793774 (N.D. Cal. Jun. 19, 2007), in which the court denied a motion to preliminarily approve a settlement because it purported to require absent class members to opt out of the settlement to protect their FLSA rights:

> Under no circumstances can counsel collude to take away FLSA rights including the worker's right to control his or her own claim without the burden of having to opt out of someone else's lawsuit.  Workers who voluntarily send in a claim form and affirmatively join in the action, of course, can be bound to a full release of all federal and state rights.  But *[it] is unconscionable to try to take away the FLSA rights of all workers, whether or not they choose to join in affirmatively.*

<u>Kakani</u>, 2007 WL 1793774, at *7 (emphasis added).  <u>See also</u> <u>Ellis</u>, 527 F. Supp. 2d at 455 ("When parallel actions are brought simultaneously under both the FLSA and Fed. R. Civ. P. 23 a decision on the Rule 23 action has '*res judicata* effect on any unnamed class members who did not opt out,' even though Congress's 'clear aim' in amending the FLSA 'was to ensure that each employee *expressly consents* to any collective adjudication of his or her rights under the FLSA'") (citation omitted) (emphasis added).  In short, the notion of requiring an absent class member to affirmatively opt out of an action to protect his or her FLSA rights is exactly what Congress sought to preclude when it created the opt-in requirement of Section 16(b).

Much of Plaintiff's opposition relies upon the FLSA's "savings clause," 29 U.S.C. § 218, which Plaintiff claims "explicitly authorize[s]" his pursuit of class claims under Illinois law.  (Pl. Opp., 5-6, 11, 15).  The FLSA's "savings clause," however, does no such thing.  That provision contains only a *limited* preservation of state rights, stating only that a state may enact a law with "a minimum wage higher than the minimum wage under [the FLSA] or a maximum workweek lower than the maximum workweek established under [the FLSA]," or higher standards relating to the employment of child labor.  29 U.S.C. § 218(a).  Chase does not dispute these points,

which are wholly irrelevant to the instant motion.  Plaintiff, however, attempts to stretch the narrow language of the savings clause into a broad right to contravene the express written consent requirement of Section 16(b) by adjudicating the overtime claims of absent class members without their written consent.  Nothing in the savings clause supports Plaintiff's argument.  See, e.g., Ellis, 527 F. Supp. 2d at 450 ("The terms of the saving clause are clear and narrowly drawn: they merely establish a wage and hour 'floor' above which the states are free to rise"); Woodard, 2008 WL 471552, at *11 ("A saving clause that covers a narrow range of state law . . . does not eliminate the possibility that other state laws, or even the laws "saved," will conflict with federal law and therefore frustrate Congress's intent").[5]

Plaintiff's reliance on the savings clause seems to rest on the flawed premise that allowing him to pursue overtime claims on an opt-out basis by calling upon identical state laws somehow provides workers with an additional protection not afforded by the FLSA.  (Pl. Opp. 5-6).  In fact, the exact opposite is true:  just like the savings clause of Section 18(a), the opt-in requirement of Section 16(b) affords workers *greater* protection by creating a scheme whereby only those workers who affirmatively opt into an action are bound by its judgment.  See Ellis, 527 F. Supp. 2d at 455 ("Congress's 'clear aim' in amending the FLSA 'was to ensure that each employee *expressly consents* to any collective adjudication of his or her rights under the FLSA'"); Secretary of Labor Amicus Letter Brief in Long John Silver's Rests., Inc. v. Cole, No. 05-CV-3039 (D.S.C. Filed Dec. 13, 2005) ("Section [216(b)] of the FLSA unambiguously provides employees the right not to have their statutory claims litigated without their written consent").  Allowing Plaintiff to litigate his overtime claim on behalf of absent class members without their affirmative consent would hinder this protection that Congress provided to workers.

---

[5]   The Supreme Court has cautioned that it would "decline to give broad effect to savings clauses where doing so would upset the careful regulatory scheme established by federal law."  United States v. Locke, 529 U.S. 89, 106 (2000) ("a savings clause should not be read more broadly than is indicated by its placement and text").

**C.      Litigating Plaintiff's State Law Overtime Claim Using The Opt-Out Procedures of Rule 23 Would Violate The Rules Enabling Act.**

With respect to the Rules Enabling Act ("REA"), Plaintiff eschews the opportunity to engage in any meaningful analysis and again resorts to mischaracterizing Chase's arguments with sweeping hyperbole together with a gross exaggeration of the scope of the FLSA's savings clause.  (See, e.g., Pl. Opp. 15) ("Defendants cannot credibly argue that any party's substantive rights under the FLSA are impaired if the FLSA allows states to enact their own wage and hour claims").  Obviously, Chase has not argued that states cannot enact their own wage and hour laws.  Nor has Chase argued that Plaintiff or anybody else who is permitted to opt into this case cannot assert his or her own overtime claim under Illinois law.

The REA prohibits the application of a rule of practice and procedure (such as Rule 23) where such application would "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  Plaintiff argues that his use of Rule 23's opt-out procedures to adjudicate absent class members' overtime rights without their written consent would not impair any class member's substantive rights.  (Pl. Opp., 14).  But as one court recently explained, the rights Congress created both in employers and employees when it created the FLSA's opt-in requirement "are clearly substantive rights."  Ellis, 527 F. Supp. 2d at 455.  See also De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 310 (3d Cir. 2003) (noting that "[t]he aggregation of claims, particularly as class actions, profoundly affects the substantive rights of the parties to the litigation").  To allow Plaintiff to eviscerate the *substantive* rights of absent class members and Chase by using a *procedural* rule in such a manner would violate the REA.  See Ellis, 527 F. Supp. 2d at 460-61 ("where the state law claims merely parallel those made under the FLSA," the Rules Enabling Act prohibits simultaneous prosecution of state overtime claims under Rule 23 and FLSA collective actions).

Plaintiff claims that Chase, by candidly stating that some courts had not accepted its REA argument, "tacitly acknowledged that [its] REA argument is unavailing" and cites three cases that rejected the argument.  (Pl. Opp., 15 n.13).  First, Chase did not acknowledge, tacitly or

otherwise, that its argument is unavailing.  And, more importantly, those decisions Plaintiff cites afforded the issue very limited analysis.  Indeed, when defendants in the past few years first started asserting the REA as a basis for barring state law class action overtime claims, those cases cited by Plaintiff typically rejected the argument out-of-hand without any analysis of the fact that adjudicating state law overtime claims on an opt-out basis would have preclusive effect on the FLSA rights of unconsenting absent class members.  Rather, those decisions tended to reject the REA argument based on little more than the fact that there was a lack of precedent on either side of the issue.  In contrast to those decisions, the Western District of Pennsylvania recently undertook a thorough examination of the issue, recognizing the impropriety of dismissing the issue out-of-hand without sufficient analysis, and ultimately concluded that the REA provided a compelling reason to dismiss plaintiffs' opt-out class claims for overtime.  Ellis, 527 F. Supp. 2d at 456-61.  The court criticized those decisions, including several cited by Plaintiff, that had rejected the REA argument based upon "perfunctory analysis at best, much of it ignoring that fact that if *lack* of precedent were binding the law neither would nor could evolve and the courts' function, to the extent that they could function at all, would be essentially ministerial."  Id. at 456.

Because Plaintiff's use of Rule 23 to litigate his overtime claim on behalf of an opt-out class would abridge the substantive rights Congress conferred on both absent class members and employers when it established the written consent requirement, this application of Rule 23 is the precluded by the REA, 28 U.S.C. § 2072(b).

**D.    An Opt-Out Class Action Under Rule 23 Remains Inferior To Other Available Methods For Adjudication.**

In its opening brief, Chase offered multiple reasons why an opt-out class action is inferior to another available method for adjudicating Plaintiff's state law overtime claim:  an opt-in collective action under FLSA Section 16(b).  Plaintiff has not shown that any of the reasons Chase offered lacks merit.

First, as explained above, permitting Plaintiff's state law claim for overtime to go forward under Rule 23 would thwart Congressional intent and abridge absent class members' and Chase' substantive rights to have overtime claims covered by the FLSA adjudicated only on an opt-in basis.  (Def. Br., 7) (citing Edwards, 467 F. Supp. 2d at 993; McClain, 222 F.R.D. at 578).  Plaintiff does not dispute this point in the context of the superiority analysis, nor does he dispute that requiring individuals who wish to participate to opt into the suit would be a superior method of adjudication because it would afford class members greater control over their participation in the litigation than they would have in an opt-out action.  (Def. Br., 7) (citing Muecke, 2002 WL 1359411 at *2).

Plaintiff instead focuses on attacking Chase's point that a class notice that instructs potential class members both to opt into one claim for overtime and to opt out of the same substantive claim asserted under a different statute would likely confuse class members.  (Pl. Opp., 13-14).  Although several courts in this district have expressed the same concern about the potential for such confusion (Def. Br., 7-8) (citing Riddle, 2007 WL 2746597, at *4; McClain, 222 F.R.D. at 577; De La Fuente, 2002 WL 31819226, at *2), Plaintiff cites other courts that have been less concerned about the ability of counsel to craft such notices in a clear manner.  But while different courts have afforded varying weight to this individual factor, no notice could be drafted that would cure the policy conflict between Rule 23 and FLSA Section 16(b), and this Court has recognized that conflict as rendering an FLSA collective action as superior to a Rule 23 class action.  Cf. Riddle, 2007 WL 2746597, at *4 ("a risk of confusion alone would not preclude class certification.  Nonetheless, that risk is substantial and, in conjunction with the policy concerns discussed above, was appropriately considered").[6]

---

[6]    Plaintiff also attempts to minimize the cases Chase cited from this district regarding potential confusion of class members as being "of questionable authority" because those cases were more procedurally advanced than the instant case.  However, where it is apparent from the face of a complaint that the class action allegations cannot survive as a matter of law, the class action allegations should be dismissed or stricken.  See, e.g., Miller v. Motorola, Inc., 76 F.R.D. 516 (N.D. Ill. 1977) (striking class action allegations on the basis of the complaint).  Here, the Court need not wait for the parties to engage in discovery because no amount of discovery will make Rule 23's opt-out procedure superior to the congressionally-chosen opt-in scheme of FLSA Section 16(b).  See, e.g., Edwards, 467 F. Supp. 2d at 992

13

Finally, notwithstanding the multiple cases from this district that found an opt-out class action to be an inferior method of adjudicating overtime claims, Plaintiff contends that Chase's arguments are unavailing because "this Court found that class actions are the superior method for adjudicating such claims." (Pl. Opp., 13). In support of this, Plaintiff cites two cases. The first case, <u>Ladegaard</u>, 2000 WL 1774091, at *7, is of minimal precedential value inasmuch as the Court did not address the issues Chase has raised with respect to superiority, and numerous courts since <u>Ladegaard</u>, including courts in this district, have found FLSA's opt-in procedure to be superior. The second case Plaintiff cites, <u>Marquez v. Partylite Worldwide, Inc.</u>, No. 07 C 2024, 2007 WL 2461667 (N.D. Ill. Aug. 27, 2007), actually *supports* Chase's argument that a Rule 23 class action is not the superior means for adjudicating his overtime claims. Indeed, Plaintiff himself credits the <u>Marquez</u> court with "concluding that '[b]ased on the Advisory Committee Notes to Rule 23 and Congress' addition of the written notice requirement to the FLSA, an opt-out class action is not likely to be the superior method for resolving Plaintiff's state-law claims that Defendant failed to make overtime payments.'" (Pl. Opp., 13) (quoting <u>Marquez</u>, 2007 WL 2461667, at * 6).

In sum, to the extent any group adjudication would even be appropriate, there exists a superior alternative method for adjudicating Plaintiff's state law overtime claim than an opt-out Rule 23 class action.

### III.  <u>CONCLUSION</u>

Whether framed in terms of inherent incompatibility, express preemption, implied preemption, the restrictions of the Rules Enabling Act, or the absence of superiority under Rule 23(b), the central premise of the arguments set forth above and in Chase's opening brief is that allowing Plaintiff to litigate his state law overtime claim as an opt-out class action would undermine Congress's intent to limit these types of claims to opt-in collective actions, if they are permitted to proceed on a group basis at all. No less than five courts in this district have

---

(the availability of an opt-in collective action under the FLSA "undercuts all the Rule 23(b)(3) superiority factors").

recognized this central premise underlying each of Chase's arguments.  Accordingly, regardless of whichever legal paradigm or paradigms the Court chooses upon which to base its decision, Chase respectfully requests that the Court dismiss or strike Plaintiff's Rule 23 class claim for overtime in Count II of the Complaint.

Respectfully submitted,

DATED:  May 28, 2008

 s/ Lucy Schwallie                          
Sari M. Alamuddin
Lucy D. Schwallie
Morgan Lewis & Bockius, LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
(312) 324- 1000

ATTORNEYS FOR DEFENDANTS
JPMORGAN CHASE & CO.; CHASE
INVESTMENT SERVICES CORP.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 28, 2008, I electronically filed the foregoing Reply Memorandum of Law of Defendants JPMorgan Chase & Co. and Chase Investment Services Corp., Inc., in Further Support of Their Motion to Dismiss or Strike Pursuant to Fed. R. Civ. P. 12 with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

**Joseph H. Meltzer**
**Robert W. Biela**
**Robert J. Gray**
Schiffrin, Barroway, Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19807
 (610) 667-7706

**Gerald D. Wells, III**
Schiffrin & Barroway, LLC
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004-3481
(610) 667-7706

**Marvin Alan Miller**
**Matthew E. Van Tine**
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
312-332-3400
(312) 676-2676 (fax)

By:      s/ Lucy Schwallie